Sullivan, J.
This was an action of ejectment. The facts were as follows, viz.: At the September term, 1839, of the Jefferson Circuit Court, two judgments were entered against one John Stivers; one in favour of J. Southwick and Co.; the other in favour of Chase and others. The judgment in favour of Southwick and Co., was rendered on the fifth day of the term; the one in favour of Chase and others was entered on the ninth day of the term. Both suits were by action of debt, and both docketed for the second day of the term as the statute requires. On the 26th of March, 1840, Chase and others caused an execution of ji. fa. to issue on the judgment in their favour, by virtue of which the sheriff advertised and sold the lot in controversy, and at that sale Whitney became the purchaser. On the 22d of April, 1840, Southwick and Co., the lessors of the plaintiff, issued an execution on the judgment in their favour, which was also levied on the lot sold by virtue of the first execution, and being again exposed to sale by the sheriff, Southwick and Co., became the purchasers. It further appears that the sale, at which Whitney became the purchaser, was made on the 25th of April, three days after the execution in favour of Southwick and Co., was issued and delivered to the sheriff; and that Whitney had notice that thebxeeution of Southwick and Co., was in the sheriff’s hands, &c. The cause, by consent of parties, was submitted to the Court, who gave judgment for the plaintiff.
*346 There is no controversy between the parties except as to one point; and that is,whetherajudgment prior in £ime has a •priority of lien over a subsequent judgment, rendered against the same individual at the same term? For the plaintiff in error, it is contended that the lien given by statute does not apply as between judgment-creditors, or suitors in Court, but only to the case of purchasers in pais; for the defendant, it is insisted that the lien does so apply, and that it is absolute in favour of the prior judgment. The point must be settled by reference to our statutes.
*The 13th section of the act organizing Circuit Courts, &c., R. S. 1838, p. 164, requires the proceedings of each day of the Court to be read and signed, &c.; and provides that no judgment of said Courts shall be of any force, or considered valid, until the same is so read and signed. The 22d section of the act for the prevention of frauds and perjuries, R. S., 1838, p. 316, gives to such judgments the operation of, and declares they shall be, liens upon the real estate of the person or persons against whom they may be rendered, from the day of the rendition thereof, in the county in which they may be rendered, <fec.
We are aware that the construction of those statutes, contended for by the defendant, may, if adopted, produce great inequality and injustice amongst suitors, yet, notwithstanding our desire to prevent such a result,we are constrained by the imperative language of the statute to adopt it. The statute makes the judgment a lien upon the real estate of the debtor,from the day it is rendered. By the common law, judgments related, generally, to the first day of the term at which they were rendered. The statutes above cited, as well as our practice act, do virtually, if not expressly, abolish that in-tendment of the common law. The practice act directs the clerks of the Circuit Courts, in making their dockets, to set as many causes for each day as in his opinion will be disposed of by the Court, always docketing the actions of debt for the second day, &c. Those statutes recognize distinct *347 days, and definitely fix the day from which a judgment shall be operative.
M. G. Bright, for the plaintiff.
S. C. Stevens, for the defendant.
The English statute of frauds, 29 Car., 2, requires judgments to be signed,and provides that, as against bona fide purchasers, they shall be judgments only from the time they are so signed, and not relate to the first day of the term. The statute, it has been decided, does not apply as between judgment-creditors and suitors in Court. Its only object was the protection of those who, bona fide and for. a valuable consideration, purchased the lands of the debtor between the first day of the term, and the day on which the judgment was entered. It seems to have been the object of that statute not to disturb the general intendment of the law, by which judgments are made to relate to the first day of the *term, except in the particular case specified; but by our statute, the lien of a judgment is fixed in all cases to, commence on the day the judgment becomes valid by being signed, &c., and operates, of necessity, as well between judgment-creditors as others.
We are aware of the hardship to which creditors are sometimes subjected by the operation of the statute, but the remedy must be applied by the Legislature, not by us.
In this case, it appears that the lessors of the plaintiff purchased under the first judgment. The execution on that judgment was in the hands of the sheriff at the time the plaintiff in error purchased under the second judgment. Of that fact he had notice. We therefore think the judgment of the Circuit Court should be affirmed.(1)
Per Curiam,.—The judgment is affirmed with costs.

 In April, 1821, a judgment was rendered against A in favor of S' for $2,747, and in March following another judgment was rendered against A in favor of 0 for $1,241. Execution was immediately issued upon the latter judgment, and A’s land sold under it to D. Soon afterwards another execution issued upon the first judgment, and the same land was sold under it to E. The statute of the State where these proceedings occurred made judgments a lien on the debtor’s land for five years. Held, by the Supreme *348 Court of the U. States, that the purchaser under the first judgment was entitled to the land. The C. J. said that it Was a principle believed to be universal, that a prior lien gives a prior claim, which is entitled to prior satisfaction out of the subject it binds, unless the lien be intrinsically defective, or be displaced by some act of the party holding it, which shall postpone him in a court of law or equity to a subsequent claimant; and that the single circumstance of not proceeding on it until a subsequent lien had been obtained and carried into execution had never been considered as such an act. Rankin et al. v. Scott, 12 Wheat., 177.
But goods and chattels are only bound [from the time of the delivery of the execution to the sheriff.* Note to McCall v. Trevor, 4 Blackf., 496 ; R. S.,1843 p. 743. If two writs of execution against the same person be delivered to, the sheriff, he must take the goods on that execution which was first delivered to him, even where both were delivered to him on the same day. Sewell on Sheriffs, 259, 260. In the case of several executions against the same defendant in the hands of different officers, the execution first levied on the goods has the preference. McCall v. Trevor, supra; R. S., 1843, p. 744.